UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**OWEN HARTY,**

       **Plaintiff,**

**v.**                                                   **Case No: 6:10-cv-1333-Orl-28GJK**

**MAL-MOTELS, INC.,**

       **Defendant.**

## REPORT AND RECOMMENDATION

This cause came on for consideration, without oral argument, on the following motions:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S VERIFIED APPLICATION FOR ATTORNEY'S FEES, COSTS, EXPERT WITNESS FEES AND LITIGATION EXPENSES AND MEMORANDUM OF LAW (Doc. No. 62)** |
| **FILED:** | **July 26, 2012** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**.

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION FOR AWARD OF ATTORNEY'S FEES & COSTS (Doc. No. 64)** |
| **FILED:** | **July 30, 2012** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

**I.    BACKGROUND**

On September 7, 2010, Plaintiff, Owen Harty, filed a Complaint seeking declaratory and

injunctive relief for violations of the Americans with Disabilities Act (hereafter "ADA") and Florida Accessibility Code (hereafter "FAC") on Defendant's, Mal-Motels, Inc., property located at 4455 W. Newhaven Avenue, Melbourne, Florida. Doc. No. 1. Plaintiff alleges that he is confined to a wheelchair and there are numerous "architectural barriers" on Defendant's property "which discriminate against him on the basis of his disability and have endangered his safety." Doc. No. 1 at 2, ¶¶ 1, 5. Plaintiff alleges Defendant's property violates the ADA and FAC in the following areas: parking and loading zone; accessible routes; accessible guestrooms and suites; and access to goods, services and maintenance of accessible features. Doc. No. 1 at 3-4 ¶ 10.

Plaintiff requests the Court enter a declaratory judgment that Defendant is in violation of the ADA. Doc. No. 1 at 7 ¶ a. Plaintiff requests the Court grant injunctive relief by ordering Defendant "to make all readily achievable alterations;" or "make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA and FAC[.]" Doc. No. 1 at 7 ¶ b. Plaintiff also requests an award of attorney's fees, costs and litigation expenses, pursuant to 42 U.S.C. § 12205. Doc. No. 1 at 7 ¶ c.

On August 8, 2011, Plaintiff filed a motion for summary judgment that was supported by his declaration, his expert's declaration and his expert's report. Doc. Nos. 26-27. On March 8, 2012, the Court entered its order on the motion for summary judgment, finding that "there is no genuine issue of fact that Defendant . . . failed to comply with the ADA's and FAC's architectural requirements for places of public accommodation. However, at this time there is no evidence on the record as to whether compliance . . . is 'readily achievable.'" Doc. No. 43 at 5. The Court granted Plaintiff's "motion for summary judgment on all issues except whether the accommodations are readily achievable." Doc. No. 43 at 5.

On April 26, 2012, Plaintiff filed a supplemental motion for summary judgment addressing whether compliance was readily achievable. Doc. No. 46. In this supplemental motion, Plaintiff pointed out that his expert opined that Defendant could install proper handicapped signage, replace drapery wands, replace writing tables, bevel four thresholds, raise four electrical outlets to the proper height, adjust a door closer, lower the registration counter, restripe the parking lot, install proper hand rails at the curb ramp and covert a men's restroom for $11,000.00. Doc. No. 46 at 2-3 ¶¶ 3-4. Plaintiff also pointed out that his expert opined that other "remedial steps . . . would come with a higher cost." Doc. No. 46 at 4 ¶ 7. Plaintiff contended that making all of the changes suggested by his expert were readily achievable because Defendant spent almost $200,000.00 for building renovations and soft goods, $64,000.00 of which was for painting. Doc. No. 46 at 4 ¶ 5.

On May 14, 2012, Defendant filed its memorandum in opposition to Plaintiff's supplemental motion for summary judgment. Doc. No. 48. Defendant pointed out that Plaintiff failed to indicate that his expert opined that it would cost $141,300.00 to bring its property into full ADA compliance. Doc. No. 3-4. As a result, Defendant contended that Plaintiff failed to meet his "burden of going forward with any evidence that the $141,300.00 estimated by his own experts . . . is either readily achievable or able to be carried out with much difficulty or expense." Doc. No. 48 at 4 ¶ 11.[1]

On July 13, 2012, the Court granted in part and denied in part Plaintiff and Defendant's motions for summary judgment. Doc. No. 60. The Court noted that Plaintiff's supplemental motion only addressed his expert's cheaper recommendations, totaling $11,675.00, and brushed over the more expensive recommendations by stating they would come at a higher cost. Doc.

---

[1] The Court construed Defendant's response as a cross-motion for summary judgment. Doc. No. 60 at 2 n.2.

No. 60 at 5.  The Court found that Plaintiff met his burden of establishing that the recommendations totaling $11,675.00 were readily achievable by showing the amount Defendant spent on painting and building renovations.  Doc. No. 60 at 6.  The Court found that Plaintiff failed to present any evidence to meet his burden of establishing that his expert's other recommendations, totaling $113,000.00, were readily achievable.  Doc. No. 60 at 6-7.  Based on these findings, the Court enjoined Defendant from continuing to violate the ADA by ordering it to remove the architectural barriers totaling $11,675.00.  Doc. No. 60 at 7.[2]  The Court concluded that "Plaintiff has not shown that the other remediations . . . are readily achievable, and therefore Defendant shall not be required to undertake such remediations."  Doc. No. 60 at 8 ¶ 2.  The Court ordered the Clerk to enter judgment in favor of Plaintiff and judgment was entered on July 16, 2012.  Doc. Nos. 60 at 8 ¶ 4; 61.

On July 26, 2012, Plaintiff filed a verified motion seeking prevailing party attorney's fees and costs, pursuant to 42 U.S.C. § 12205 (hereafter "Plaintiff's Motion").  Doc. No. 62.  Plaintiff filed his expert's invoices and a billing invoice in support.  Doc. Nos. 62-3; 63-1.  On July 30, 2012, Defendant moved for an award of prevailing party attorney's fees and costs, pursuant to 42 U.S.C. § 12205 (hereafter "Defendant's Motion").  Defendant supports this request with its counsel's time logs and an affidavit from Darren J. Elkind, Esq.  Doc. Nos. 64-1; 64-2.  On August 6, 2012, Plaintiff filed his response to Defendant's Motion.  Doc. No. 65.  On August 10, 2012, Defendant filed its response to Plaintiff's Motion.  Doc. No. 66.  In its response, Defendant

---

[2]  The Court required Defendant to remove the architectural barriers by making the following renovations:  install proper handicapped signage for the restrooms, adjust the door from the property to the adjacent restaurant, lower the registration counter, re-strip the parking lot, install proper handrails for the built-up curb ramps that are adjacent to the handicap-accessible parking spaces and path to the registration office, convert the men's restroom into a single-user unisex restroom and replace drapery wands, adjust writing tables, bevel thresholds and raise electrical outlets in the handicap-accessible guestrooms.  Doc. No. 60 at 7.

requests the Court hold an evidentiary hearing unless the Court denies Plaintiff's Motion. Doc. No. 66 at 6 ¶ 15.

## II. LAW

In an ADA action, 42 U.S.C. § 12205 governs the award of attorneys' fees and states:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205. Thus, this statute permits the Court, in its discretion, to award reasonable attorney's fees, litigation expenses and costs to the prevailing party. To be a prevailing party, there must be an "alteration in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001). This alteration in legal relationship can take the form of a judgment on the merits or a court ordered consent decree. *Id.* at 604.[3]

42 U.S.C. § 12205 does not distinguish between a plaintiff or defendant when awarding prevailing party attorney's fees, costs and litigation expenses. The Eleventh Circuit in *Bruce v. City of Gainesville*, 177 F.3d 949, 952 (11th Cir. 1999), adopted the Supreme Court's holding in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 422 (1978), that a "plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to

---

[3] The size of the judgment is not determinative as a plaintiff who obtains a judgment for nominal damages is considered a prevailing party. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992). However, a prevailing party in such instance is generally not entitled to an award of attorney's fees. *Id.* at 115.

litigate after it clearly became so."[4] Thus, a prevailing defendant in an ADA action is not entitled to an award of attorney's fees, costs and litigation expenses unless plaintiff's claim was frivolous, unreasonable or groundless.

The Eleventh Circuit has identified the following general guidelines to guide the district courts in determining whether a plaintiff has brought a frivolous claim: 1) whether plaintiff established a prima facie case; 2) whether defendant offered to settle; and 3) whether the trial court dismissed the case prior to trial or a full trial was held on the merits. *Id.* These guidelines, however, are not hard and fast rules because determining whether a plaintiff's claim was frivolous is done on a case by case basis. *Id.* As stated in *Jerelds v. The City of Orlando*, 194 F. Supp. 2d 1305, 1311 (M.D. Fla. 2002), the court "must focus on the question of whether the case is seriously lacking in arguable merit."

### III. ANALYSIS

In the case at bar, judgment was entered for Plaintiff (Doc. No. 61), thereby making him a prevailing party. *See Buckhannon Bd. & Care Home*, 532 U.S. at 604. Consequently, Plaintiff's claims that Defendant's property violates the ADA and FAC were not frivolous and Defendant is not entitled to an award of attorney's fees and costs. *See Christiansburg*, 434 U.S. at 422 (plaintiff should not be assessed opposing party's attorney's fees unless the court finds plaintiff's claim was frivolous). Accordingly, it is **RECOMMENDED** that Defendant's Motion be **DENIED**.

In Plaintiff's Motion, Plaintiff states he has incurred $42,105.00 in attorney's fees, $287.50 in paralegal fees, $501.50 in costs and litigation expenses, $6,800.00 in expert fees and

---

[4] The Supreme Court's holding in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 417 (1978), was made in the context of determining what "standard should inform a district court's discretion in deciding whether to award attorney's fees to a successful *defendant* in a Title VII action."

$1,000.00 for his expert's re-inspection fee. Doc. No. 62 at 13. Although these sums total $50,694.00, Plaintiff states that his total attorney's fees, costs and litigation expenses are $50,393.50. Doc. No. 62 at 13. Plaintiff then requests a total award of $56,363.50. Doc. No. 62 at 13. The divergent sums in Plaintiff's Motion are further called into question by Plaintiff's attached billing invoice.

The billing invoice indicates that Plaintiff's counsel billed a total of 117.3 hours at a $350.00 hourly rate, for a total of $41,055.00. Doc. No. 63-1 at 13.[5] The billing invoice indicates total "[c]ompensable paralegal time" of 2.1 hours at a $115.00 hourly rate, for a total of $241.50. Doc. No. 63-1 at 13.[6] The billing invoice indicates total costs of $429.00. Doc. No. 63-1 at 14. The billing invoice indicates total expert fees of $6,800.00 along with a $1,000.00 re-inspection fee. Doc. No. 63-1 at 14. These sums total $49,525.50. However, in the billing summary of the billing invoice, Plaintiff's counsel totals the attorney's fees and costs incurred to be $49,643.50, based on $287.50 in compensable paralegal time and $501.00 in total costs. Doc. No. 63-1 at 14. Thus, Plaintiff's Motion and billing invoice provide five different totals: $49,525.50, $49,643.50, $50,393.50, $50,694.00 and $56,363.50. The Court presumes that Plaintiff's counsel's invoice accurately reflects the amounts incurred and, therefore, finds that Plaintiff has incurred $49,525.50 in attorney's fees, costs and litigation expenses.

Defendant does not contend the hourly rate Plaintiff's counsel seeks is unreasonable. The only time Defendant challenges as unreasonable is for the travel and time expended to appear for a Court ordered hearing that was required because Plaintiff's counsel failed to appear "for a

---

[5] The time entries on the billing invoice reflect that Plaintiff's counsel spent 119.2 hours working on this case. Doc. No. 63-1 at 13. There is no explanation for the 1.9 hour reduction.

[6] The billing invoice indicates that the paralegal spent 3.2 hours working on this case. Doc. No. 63-1 at 13. There is no explanation for the reduction in the paralegal time.

prior, Court ordered status hearing at which both Defendant's principal and Defendant's counsel did appear." Doc. No. 66 at 7-8 ¶ 19.[7] Rather than challenge the lodestar, Defendant asserts Plaintiff's Motion should be denied because the results obtained were minimal. Doc. No. 66 at 2-6, 8. In making this assertion, Defendant compares the $11,675.00 worth of renovations Plaintiff proved were readily achievable with the $138,175.00 worth of renovations Plaintiff's expert opined needed to be made. Doc. No. 66 at 2 ¶ 3. Defendant contends that the "dollar value of renovations equal to $11,675 was the **'*amount involved*'** in this case." Doc. No. 66 at 4-5 at ¶ 11 (emphasis in original). Because Plaintiff only proved that $11,675.00, or 8.5%, out of $138,175.00 worth of renovations were readily achievable, Defendant concludes that the results obtained was minimal and Plaintiff should not recover any attorney's fees.

In the Eleventh Circuit, reasonableness is generally determined using the familiar lodestar approach. "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rate and hours expended are reasonable. *See Norman v. Housing Auth. of the City Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). In making such determinations, the Court is an expert on the issues of the prevailing market's reasonable hourly rates for similar work and hours expended. *Id.* at 1303; *Loranger*, 10 F.3d at 782.

---

[7] Defendant does not challenge Plaintiff's later appearance as unnecessary, but simply that Plaintiff's failure to appear cost Defendant additional time and attorney's fees. Thus, Defendant is requesting the Court sanction Plaintiff for his non-appearance. There is nothing in the record that indicates Defendant moved for sanctions against Plaintiff on this basis. Plaintiff has not been given the opportunity to respond and, therefore this argument is rejected.

After the lodestar is calculated, the Court must consider the necessity for an adjustment based on the results obtained. *Norman*, 836 F.2d at 1302. "Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award" under *Hensley*. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). The results obtained is a "particularly crucial" consideration when a prevailing plaintiff only succeeds on some of his claims. *Hensley*, 461 U.S. at 434. A reduction in the lodestar is appropriate when the relief obtained, no matter how significant, is "limited in comparison to the scope of the litigation as a whole." *Norman*, 836 F.2d at 1302. However, "it is improper to make the reduction based on a simple ratio of successful issues to issues raised." *Id.*

In her concurring opinion in *Farrar*, 506 U.S. at 121-22, Justice O'Connor identified three "indicia of success" to consider in determining whether a prevailing plaintiff obtained a technical or de minimis victory. The first indicium is the extent of plaintiff's success. *Id.* at 122. The second indicium is the significance of the legal issue. *Id.* The third indicium is the public purpose that was served. *Id.*

**A. Reasonable Hourly Rate**

Plaintiff's counsel, Thomas Bacon and Phillip Michael Cullen, request a $350.00 hourly rate for their services and a $115.00 hourly rate for their paralegal. Doc. No. 62 at 9. Courts in this district have routinely found that a reasonably hourly rate for Messrs. Bacon and Cullen is $300.00 per hour.[8] *See Nat'l Alliance for Accessability v. Hull Storey Retail Group, LLC*, No. 3:10-cv-778-J-34JBT, 2012 WL 3853520 at *4 (M.D. Fla. June 28, 2012) (and cases cited therein). Courts in this district have also routinely found that a reasonable hourly rate for

---

[8] Although Messrs. Bacon and Cullen were awarded $350.00 per hour in *Harty v. Bapuji, Inc.*, No. 8:10-cv-2720-T-27TBM, 2012 WL 2044970 (M.D. Fla. May 17, 2012), the majority of the courts in this district have found that $300.00 is a reasonable hourly rate. *See Nat'l Alliance*, No. 3:10-cv-778-J-34JBT, 2012 WL 3853520.

Plaintiff's counsel's paralegal to be $95.00 per hour or less. *See id.*; *Harty v. Bapuji, Inc.*, No. 8:10-cv-2720-T-27TBM, 2012 WL 2044970 (M.D. Fla. May 17, 2012) (finding $90.00 to be a reasonable hourly rate). Accordingly it is **RECOMMENDED** that the Court find $300.00 to be a reasonable hourly rate for Messrs. Bacon and Cullen, and $95.00 to be a reasonable hourly rate for their paralegal.

### B. Reasonable Hours

The billing invoice indicates that Plaintiff's counsel spent 117.3 hours on his case, split between three attorneys. Doc. No. 63-1 at 13. Mr. Bacon spent 8.0 hours, Mr. Cullen spent 104.2 hours, and Spencer Rose spent 5.0 hours. Doc. No. 63-1 at 2-3, 13. Plaintiff's Motion does not address a reasonable hourly rate for Mr. Spencer or even mention him as an attorney that worked on Plaintiff's case. Accordingly, it is **RECOMMENDED** that the Court find that Plaintiff has not met his burden and is not entitled to an award for Mr. Spencer's services. After reviewing the time entries for Mr. Bacon in the billing invoice, it is **RECOMMENDED** his time be found reasonable. Mr. Cullen's time, however, reflects several entries that are excessive.

The billing invoice reflects an entry on August 8, 2011, for 8.0 hours preparing a motion for summary judgment. Doc. No. 63-1 at 7. Plaintiff's motion for summary judgment was compared to the motion for summary judgment Plaintiff filed in *Harty v. The Orlando Crossings, Inc.*, No. 6:10-cv-986-GAP-KRS (M.D. Fla. filed Mar. 31, 2011). These two motions and their accompanying memoranda of law are practically identical. The only notable differences are that the motion for summary judgment filed in this case contains one additional paragraph and a changed sentence. *See* Doc. No. 26 at 2, 4. The accompanying memorandum of law differs by one sentence. *See* Doc. No. 26-1 at 6. Mr. Cullen clearly copied and pasted almost all of the content from the motion and memorandum for summary judgment filed in *The Orlando*

*Crossings*, No. 6:10-cv-986-GAP-KRS, for use in this case. Billing 8.0 hours for preparing the motion for summary judgment is clearly excessive and it is **RECOMMENDED** that only 1.0 hour be awarded for this task. *See Norman*, 836 F.2d at 1301 (parties are required to exercise billing judgment and exclude hours that are excessive, redundant or unnecessary).

The billing invoice reflects that Mr. Cullen spent 7.2 hours responding to Defendant's first motion to stay and 1.3 hours responding to Defendant's second motion to stay. Doc. No. 63-1 at 7.[9] Defendant's motions requested the Court deny or delay ruling on Plaintiff's motion for summary judgment to allow it to conduct discovery. Doc. No. 30. Plaintiff's first response was five (5) pages. Doc. No. 31. Other than containing one page of new content, Plaintiff's second response is identical to his first response. *See* Doc. Nos. 31, 34. The issue raised by Defendant in its motions was not novel or complex and spending 8.5 hours drafting two five (5) page responses, the second of which is practically identical to the first, is excessive. Accordingly, it is **RECOMMENDED** that Plaintiff be awarded a total of 1.7 hours for drafting his first and second responses to Defendant's motions to stay.

The billing invoice reflects that Mr. Cullen spent 6.7 hours reviewing and drafting Plaintiff's renewed motion for summary judgment. Doc. No. 63-1 at 10-11. The renewed motion for summary judgment is six (6) pages and addresses whether the renovations are readily achievable. Doc. No. 46 at 1. As reflected in the Court's order partially granting Plaintiff's renewed motion for summary judgment, Plaintiff only addressed and proved that the cheaper renovations were readily achievable. Doc. No. 60. In regard to the more expensive renovations, Plaintiff failed to provide any evidence that they were readily achievable. Doc. No. 60 at 7.

---

[9] The docket entries in this case do not reflect that Defendant filed a motion to stay. Defendant did, however, file two motions to continue or deny Plaintiff's motion for summary judgment. Doc. Nos. 30, 33. The Court presumes that the billing invoice's reference to motions to stay refer to the motions to continue or deny.

With regard to the cheaper renovations, the Court found that Plaintiff had simply taken rudimentary steps to show that Defendant could pay for the renovations. *See* Doc. No. 60 at 6. Given Plaintiff's rudimentary effort in proving the cheaper renovations were readily achievable, and failure to present any evidence that the more expensive renovations were readily achievable, billing 6.7 hours for drafting the renewed motion for summary judgment is excessive. Accordingly, it is **RECOMMENDED** that Plaintiff be awarded 1.0 hour for drafting the renewed motion for summary judgment.[10]

Based on the foregoing, the undersigned **RECOMMENDS** that Plaintiff be awarded 8.0 hours for the time spent by Mr. Bacon, 86.1 hours for Mr. Cullen after an 18.2 hour reduction and the 5.0 hours billed by Mr. Rose be disallowed. Thus, it is **RECOMMENDED** that Plaintiff be awarded 94.1 attorney hours at $300.00 per hour for a lodestar of $28,230.00. It is also **RECOMMENDED** that Plaintiff be awarded 2.1 paralegal hours at an hourly rate of $95.00 for a total of $199.50.

### C. Adjustment for Results Obtained

Defendant asserts the total amount of improvements was the amount in controversy and Plaintiff obtained minimal results because he only proved that $11,675.00 worth of improvements were readily achievable, compared to the $138,175.00 worth of improvements Plaintiff's expert opined needed to be made. Doc. No. 66 at 2. Defendant cites no authority that supports analyzing the results obtained in an ADA case in this manner. *See* Doc. No. 66 at 4-5 ¶

---

[10] An argument can be made that no time should be awarded for preparing and filing the renewed motion for summary judgment as Plaintiff's attorneys, who claim to specialize in suits to remedy ADA violations (*see* Doc. No. 62 at 4), knew they needed to present facts and argument to establish that the property improvements were readily achievable. Plaintiff's counsel failed to present any facts or arguments on this issue in the initial motion for summary judgment. Instead, the Court had to alert them of this deficiency and counsel only addressed the issue cursorily in the renewed motion. *See* Doc. No. 60 at 6. Instead of recommending the time spent on drafting the renewed motion for summary judgment be disallowed entirely, the undersigned finds that awarding 1.0 hour is appropriate and reasonable.

10. Defendant's analysis requires determining results obtained through the improper method of using a "simple ratio of successful issues to issues raised." *Norman*, 836 F.2d at 1302. Further, it is unclear why the Court should utilize the monetary comparison Defendant advances when a private ADA plaintiff cannot be awarded monetary damages. Instead, a private ADA plaintiff is limited to injunctive relief. *See* 42 U.S.C. § 12188. Accordingly, Defendant's suggestion to compare the amount of improvements Plaintiff proved were readily achievable with those he did not prove were readily achievable is rejected. Instead, the Court will utilize the indicia outlined by Justice O'Connor in *Farrar*, 506 U.S. at 121-22.

The first indicium of success identified by Justice O'Connor in *Farrar* is the extent of plaintiff's success. *Id.* Plaintiff alleged that there were architectural barriers on Defendant's property and sought an injunction to require Defendant to make "all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA and FAC[.]" Doc. No. 1 at 7 ¶ b. Plaintiff obtained an injunction requiring Defendant to make all of the readily achievable alterations to its property. *See* Doc. No. 60. Thus, Plaintiff obtained the very relief he requested, albeit not to the full extent claimed. This counsels in favor of finding Plaintiff obtained substantial relief. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1120 (9th Cir. 2000) (ADA plaintiff who sought and obtained an injunction requiring restaurant to change its policy and practice of denying access to persons using service dogs obtained significant victory).

The second indicium of success identified by Justice O'Connor in *Farrar* is the significance of the legal issue. The purpose of the ADA is set forth in 42 U.S.C. § 12101:

> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101. Thus, the ADA was enacted to eliminate discrimination, provide consistent, enforceable standards, ensure the federal government plays a central role in enforcing the standards and invoke congressional authority to address major areas of discrimination faced by individuals with disabilities.

To enforce the ADA, Congress created a private right of action for individuals and the Attorney General. *See* 42 U.S.C. § 12188. Private individuals who file suit for ADA violations act as private attorneys general, and this enforcement mechanism "is an important part of the underlying policy behind the law." *Bruce*, 177 F.3d at 952. In light of its purpose and the fact that Congress has empowered private individuals to enforce the ADA, Plaintiff presented a significant legal issue.

The third indicium of success identified by Justice O'Connor in *Farrar* is the public purpose that was served. *Id.* As noted above, the ADA was enacted to eliminate discrimination against individuals with disabilities. By obtaining an injunction requiring Defendant to make improvements that removed architectural barriers, Plaintiff succeeded in making the property more usable and accessible to persons who are unable to walk and confined to a wheelchair.

The three indicia of success identified by Justice O'Connor in *Farrar* weigh in favor of finding that Plaintiff obtained more than a technical or de minimis victory. Accordingly, it is

**RECOMMENDED** that the Court find a reduction in the lodestar based on results obtained is unwarranted.

### D. Costs

In the billing invoice, Plaintiff seeks to recover the following costs: $7.50 for copies, $6.50 for postage, $350.00 for the filing fee and $65.00 for the process server's fee. Doc. No. 63-1 at 14. These total $429.00. These costs are recoverable as litigation expenses in an ADA action. *See Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1354 (S.D. Fla. 2006).

Plaintiff seeks to recover $6,800.00 in expert fees. Doc. No. 63-1 at 14. The expert's invoices reflect that he billed 34 hours at a $200.00 hourly rate. Doc. No. 42-3 at 2-3. Courts in this district have found that a reasonable hourly rate for an expert's services in an ADA case is $150.00 per hour. *See Nat'l Alliance*, No. 3:10-cv-778-J-34JBT, 2012 WL 3853520 at *6; *Bapuji*, No. 8:10-cv-2720-T-27TBM, 2012 WL 2044970 at *4. Accordingly, it is **RECOMMENDED** that the Court find a reasonable hourly rate for the expert to be $150.00.

The expert's invoices reflect entries where he performed multiple tasks. The expert does not, however, indicate the date or itemize the time spent on each task. Doc. No. 62-3 at 2-3. In the expert's first invoice, he indicates that he spent 2.0 hours analyzing, recording and printing photographs that depicted violations on the property. Doc. No. 62-3 at 2. The expert also indicates that he spent 8.0 hours collaborating and verifying ADA violations, reviewing photographs, performing online research of the property, researching ADA violations and preparing his initial report. Doc. No. 62-3 at 2. In his second invoice, the expert indicates he spent 3.0 hours analyzing, downloading, enhancing and printing photographs that depicted violations on the property. Doc. No. 62-3 at 3. The expert also indicated that he spent 14.0 hours researching ADA violations, performing online research of the property, and preparing his

final report. Doc. No. 62-3 at 3. Therefore, it is clear that Plaintiff's expert spent over ten (10) hours working on his report. The expert's invoices also reflect that he spent 1.5 hours having phone conversations with Plaintiff's counsel. Doc. No. 62-3 at 2-3. However, the expert does not indicate the subject matter of the conversations.

There are three problems with the expert's time in his invoices. First, the expert billed for redundant work. An attorney who moves for an award of fees is required to exercise billing discretion and exclude time that is excessive or redundant. *See Norman*, 836 F.2d at 1301. An attorney should likewise exclude redundant time of his expert. Second, the expert spent over ten (10) hours preparing his report. This time is excessive. *See Nat'l Alliance*, No. 3:10-cv-778-J-34JBT, 2012 WL 3853520 at *7 (finding ten hours spent by expert preparing his report excessive). Third, the expert billed for non-compensable time involving administrative or clerical tasks. *See Ass'n for Disabled Americans v. Lehill Partners, L.P.*, No. 2:00-CV-320-FTM29DNF, 2003 WL 24206193 at *5 (M.D. Fla. Jan. 23, 2003) (reducing expert's time spent "scheduling, faxing, sending documents, and formatting, downloading, interesting and resizing [] his report."). Accordingly, it is **RECOMMENDED** that the expert's time be reduced by forty percent (40%). *See id.* (recommending expert's time be reduced by thirty percent where expert's billing invoices indicated he spent ten hours preparing his report and contained other excessive entries). Thus, it is **RECOMMENDED** that Plaintiff recover 20.4 hours for his expert's time at an hourly rate of $150.00, for a total of $3,060.00.

Finally, Plaintiff requests $1000.00 for a re-inspection fee "to confirm that the ADA violations have been corrected." Doc. No. 62 at 11. The amount of the re-inspection fee is excessive. *See See Nat'l Alliance*, No. 3:10-cv-778-J-34JBT, 2012 WL 3853520 at *7 (noting that similar requests for a $1000.00 re-inspection fee have been rejected). It is

**RECOMMENDED** that Plaintiff be award $350.00 for the re-inspection fee. *See id.* (recommending a $350.00 re-inspection fee).

Based on the foregoing, it is **RECOMMENDED** that Plaintiff be awarded $429.00 in costs, $3,060.00 in expert fees and $350.00 for a re-inspection fee, for a total of $3,839.00.

## IV. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** the following:

1. Plaintiff's Motion be **GRANTED in part** and **DENIED in part**;

2. Plaintiff be awarded a total of $32,268.50 in attorney's fees, costs and litigation expenses, broken down as follows:

    a. $28,230.00 in attorney's fees and $199.50 in paralegal fees; and

    b. $3,839.00 for costs, expert fees and a re-inspection fee.

3. Defendant's Motion be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on November 26, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Court Judge
Counsel of Record
Unrepresented Parties